# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| ALEAH JORDAN,<br><br>     Plaintiff,<br><br>     v.<br><br>CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE, CATALINE CARVAJAL, M.D., LOLITA KARPIENE, MICHELLE PAZ, RONALD DUMANGCUS, and CAPTAIN JOHN DOE,<br><br>Jointly and Severely<br><br>     Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL** |

The Plaintiff, ALEAH JORDAN, hereby sues the Defendants and files this Complaint for Damages and says:

## THE PARTIES, JURISDICTION, and VENUE

1. This is an action for damages that exceed $75,000 exclusive of interest, costs, and attorney's fees.

2. **THE PLAINTIFF.** The Plaintiff, ALEAH JORDAN, is sui juris and is a resident of Folsom, California. At all times material hereto, the Plaintiff was a passenger onboard the *M/S Carnival Imagination* (hereinafter referred to as the "*Imagination*") a cruise ship operated by the Defendant Carnival Corporation. At all times material hereto, the Plaintiff received medical care from physicians, nurses, and other medical staff onboard the

*COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL - 1*

*Imagination*, including, but not limited to Defendants Catalina Carvajal, M.D., Lolita Karpiene, Michelle Paz, and Ronald Dumangcus.

3. **THE DEFENDANTS**.

a. **CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE**: The Defendant, Carnival Corporation d/b/a Carnival Cruise line (hereinafter referred to as "Carnival"), is incorporated outside of the state of Florida but does business in the State of Florida and at all times material hereto was and is doing business in Miami Dade County, Florida. At all times material hereto, the Carnival owned and/or operated the cruise ship on which the subject negligence occurred, offered medical services for profit onboard the cruise ship on which the negligence occurred, provided a facility onboard its ships, including the *Imagination*, for providing medical care to its passengers, including the Plaintiff herein, selected and hired the physicians and medical staff onboard its cruise ships, regularly advised the physicians and medical staff onboard its cruise ships about the policies and procedures of the ship and of the ship's medical facility, supervised, ratified, and controlled the actions and conduct of the physicians and medical staff onboard its cruise ships, held out the physicians and medical staff onboard its cruise ships as its own agents or employees, and was the employer and/or principal to its agents the physician and medical staff who provided medical care and treatment to the Plaintiff, a cruise passenger onboard a Carnival cruise ship.

b. **CATALINA CARVAJAL**: The Defendant, Catalina Carvajal, M.D., (hereinafter referred to as "Defendant Carvajal") is a physician licensed outside the state of Florida but who was an employee, agent, and/or apparent agent of Carnival. Defendant Carvajal

*COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL - 2*

is not a resident of Florida. At all times material hereto, the Defendant Carvajal worked as one of the shipboard physicians on the *Imagination* on which the subject negligence occurred and provided negligent medical care to the Plaintiff which caused permanent injury to the plaintiff.

c. **LOLITA KARPIENE, MICHELLE PAZ, and RONALD DUMANGCUS**: The Defendants, Lolita Karpiene, Michelle Paz, and Ronald Dumangcus (hereinafter referred to as "Defendants Karpiene, Paz, and Dumangcus") are nurses licensed outside the state of Florida but who were employees, agents, and/or apparent agents of Carnival. Defendants Karpiene, Paz, and Dumangcus are not residents of Florida. At all times material hereto, the Defendants Lolita Karpiene, Michelle Paz and Ronald Dumangcus worked as nurses on the *Imagination* and provided negligent medical care to the Plaintiff which caused permanent injury to the Plaintiff.

d. **CAPTAIN JOHN DOE**:   Defendant John Doe was the Captain of the *Imagination* at all times herein. The true identity of John Doe is currently unknown to Plaintiff; however, Plaintiff believes that she will be able to ascertain his identity through the discovery process. Plaintiff hereby alleges on information and believe that Defendant Doe is a licensed merchant marine officer who resides outside the State of Florida. Plaintiff further alleges on information and believe that John Doe was an employee, actual agent, and/or apparent agent of Carnival at all times material hereto.

4. **FEDERAL SUBJECT MATTER JURISDICTION.** Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000

*COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL - 3*

exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by Carnival.

5. **VENUE AND PERSONAL JURISDICTION.** This matter is properly venued within this judicial district pursuant to 28 U.S.C. § 1391 because all of the Defendants to this action are subject to this Court's personal jurisdiction. Specifically, the Defendants, at all times material hereto, through agents or representatives, in the County and in the District in which this Complaint is filed:

    a.   Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

    b.   Had an office or agency in this state and/or county; and/or

    c.   Engaged in substantial activity within this state; and/or

    d.   Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## COMMON FACTUAL ALLEGATIONS

6. Carnival is a cruise line that offers paying customers vacations aboard its cruise ships, including the *Imagination*, to ports of call worldwide.   As part of Carnival's marketing and advertising, both on the internet and aboard its ships, including the *Imagination*, Carnival

represents to its potential customers in proprietary language that it offers shipboard medical services and competent and qualified medical staff. In so doing, Carnival caters to American Citizens who are accustomed to and expect first world medical care. Specifically, Carnival advertises:

a. "Should a guest require medical attention while aboard one of our vessels, the Medical Center staff is available to assist 24 hours a day. The on board medical centers are staffed and equipped to treat routine medical conditions as well as to initiate stabilization of more serious conditions."

b. "A charge for medical services will be billed to the guest's Sail and Sign Account and a receipt will be provided for the guest to submit to their insurance company upon return for possible reimbursement."

c. "In order to maintain a safe and comfortable environment for our guests, our medical centers meet or exceed the standards established by the Cruise Lines International Association (CLIA) and the American College of Emergency Physicians (ACEP). Our medical centers are staffed by qualified physicians and nurses who are committed to providing the highest quality of shipboard medical care. Medical staffing is correlated to the size of the ship and varies from one physician and three nurses to to as many as two physicians and five nurses."

d. "Ship's physicians meet or exceed the credentialing guidelines established by the cruise ship medicine section of the American College of Emergency Physicians (ACEP). In addition, doctors must demonstrate competent skill levels and hold current certifications in basic and advance cardiac life support and cardiac care, have experience in general medicine or general practice including

emergency or critical care, and have one to three years of clinical experience and minor surgical skills, and board or similar international certification is preferred."

e.  "Shipboard medical facilities are set up to provide reasonable emergency medical care for guests and crew. In cases of extreme emergency where more comprehensive facilities are required, patients are referred to shoreside facilities."

f.  "In addition to standard lifesaving equipment such as defibrillators and external pacemakers, our medical centers carry some of the latest in medical technology including thrombolytic therapy, electrocardiograph machines, lab equipment, pulse oximetry and x-ray machines on many of our ships."

g.  "When a medical emergency arises on board, the ship's Physician shall make the decision that an air evacuation/emergency disembarkation is warranted. The Captain is notified immediately in order to confer with the physician about any need to change the course or speed of the ship or to communicate with the appropriate rescue agency (i.e., United States Coast Guard). Depending the location of the ship and the condition of the patient, a decision will be made about the best and safest way to disembark the patient – that can be diverting the ship and transferring the patient to a shore side medical facility, or via helicopter or via rapid boat."

7.  At all times mentioned herein, the *Imagination* was equipped with a medical shipboard medical facility. The *Imagination*'s medical facility was created, owned, and operated by

Carnival. Additionally, Carnival paid to stock the *Imagination*'s medical facility with all supplies, medications, and equipment found therein.

8. At all times mentioned herein, the medical personnel aboard the *Imagination*, including, but not limited to, Defendants Carvajal, Karpiene, Paz, and Dumangcus, were considered to be members of the *Imagination*'s crew, and were represented as such to immigration authorities and passengers. Additionally, Defendant Carvajal was introduced to immigration authorities and passengers as one of the *Imagination*'s officers.

9. At all times mentioned herein, Carnival required all medical personnel aboard the *Imagination*, including, but not limited to, Defendants Carvajal, Karpiene, Paz, and Dumangcus, to wear uniforms furnished by Carnival. Said uniforms identified all medical personnel aboard the *Imagination*, including, but not limited to, Defendants Carvajal, Karpiene, Paz, and Dumangcus, as crew members the *Imagination* and employees of Carnival. For example, Defendants Carvajal, Karpiene, Paz, and Dumangcus wore nametags bearing Carnival's name and/or logo. Additionally, the uniforms worn by Defendants Carvajal, Karpiene, Paz, and Dumangcus had epaulettes and stripes similar to those worn by other crew members. Additionally, the uniform worn by Defendant Carvajal identified her as one of the ship's officers.

10. At all times mentioned herein, Carnival offered Defendant Carvajal senior officer benefits including senior officer status, round-trip transportation from residence to the ship, uniforms, indemnification, health care, meals, and a private furnished cabin with refrigerators, telephones, computers with internet access, and daily housekeeping services.

*COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL - 7*

11. At all times mentioned herein, all medical personnel aboard the *Imagination*, including, but not limited to, Defendants Carvajal, Karpiene, Paz, and Dumangcus, were under the command of the *Imagination*'s superior officers, including, but not limited to, Captain John Doe.

12. At all times mentioned herein, all medical personnel aboard the *Imagination*, including, but not limited to, Defendants Carvajal, Karpiene, Paz, and Dumangcus, were employed by Carnival and acting within the course and scope of their employment. Carnival paid monthly salaries to all medical personnel aboard the *Imagination*, including, but not limited to, Defendants Carvajal, Karpiene, Paz, and Dumangcus. Additionally, Carnival had the right to fire at will and without cause all medical personnel aboard the *Imagination*, including, but not limited to, Defendants Carvajal, Karpiene, Paz, and Dumangcus.

13. At all times mentioned herein, Carnival had promulgated written directives, policies, procedures, protocols, and guidelines that it required its medical staff aboard its cruise ships to follow, including Defendants Carvajal, Karpiene, Paz, and Dumangcus. These written directives, policies, procedures, protocols, and guidelines pertained to numerous subjects, including, but not limited to, the provision of medical care to passengers aboard Carnival's cruise ships.

14. At all times mentioned herein, Carnival directly billed passengers aboard the *Imagination*, including Plaintiff, for all medical services they received from Carnival's medical personnel aboard the *Imagination*, including, but not limited to, Defendants Carvajal, Karpiene, Paz,

and Dumangcus. Said charges were billed directly to passengers, including Plaintiff, on their Sign and Sail Card. Carnival profited from all medical care provided to its passengers.

15. Plaintiff saw and relied on Carnival's advertising when selecting her Carnival cruise and Carnival's onboard representations regarding the *Imagination*'s medical staff. Plaintiff relied upon Carnival's representations in that she believed she would receive excellent, first world medical care from Carnival and the *Imagination's* medical center if she required it during her vacation.

16. On September 25, 2016, Plaintiff boarded the *Imagination* for a four (4) night cruise at the Port of Long Beach, California. The itinerary called for the *Imagination* to: (1) visit Catalina Island, California on September 26, 2016; (2) visit Ensenada, Mexico on September 27, 2016; (3) spend a day at sea following the California coastline on September 28, 2016; and, (4) return to the Port of Long Beach on September 29, 2016.

17. On September 28, 2016, the *Imagination* was sailing at sea approximately 50 miles off the coast of California. At all times on September 28, 2016, the *Imagination* was within the area of responsibility (AOR) of the United States Coast Guard and within easy reach of its helicopters for an emergency helicopter evacuation.

18. At approximately 8:20 a.m. on September 28, 2016, Plaintiff was brought to the *Imagination*'s medical facility by personnel from the *Imagination*'s medical center on a stretcher. The *Imagination's* medical personnel, including, but not limited to, Defendants Carvajal, Karpiene, Paz, and Dumangcus, thereafter voluntarily assumed care of Plaintiff.

*COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL - 9*

Upon arrival to the medical facility, Plaintiff was somnolent, incoherent, tachycardic (had an abnormally high heart rate), and unable to stand up. Additionally, Plaintiff presented with abnormally low oxygen saturation (spO2) levels, an abnormally high respiratory rate, and abnormally high blood glucose levels. Plaintiff's signs and symptoms established that she was suffering from a life threatening medical emergency that any qualified and competent physician or nurse would have recognized. Indeed, Defendant Carvajal diagnosed Plaintiff as suffering from a altered mental state, acute kidney failure, uremic encephalopathy (brain damage from acute kidney failure requiring immediate dialysis), and sepsis.

19. Despite Plaintiff's conditions, Defendants Carvajal, Karpiene, Paz, and Dumangcus negligently cared for her, and caused irreparable harm to Plaintiff by, among other things:

    a.  Refusing or failing to properly assess Plaintiff's condition.

    b.  Refusing or failing to timely diagnose and treat Plaintiff's condition.

    c.  Refusing or failing to provide appropriate medication to Plaintiff.

    d.  Refusing or failing to order appropriate diagnostic scans to assess Plaintiff's condition.

    e.  Refusing or failing to obtain consultations from appropriate medical specialists ashore.

    f.  Refusing or failing to properly monitor Plaintiff while she was under their care.

    g.  Deviating from the standard of care for patients who present with Plaintiff's signs and symptoms.

20. In addition to the allegations contained in paragraph 19, Plaintiff further alleges that Defendants Carvajal, Karpiene, Paz, and Dumangcus negligently cared for her by refusing or failing to request that Captain John Doe contact the United States Coast Guard to request a helicopter evacuation for Plaintiff, as the standard of care required of Defendants Carvajal, Karpiene, Paz, and Dumangcus to do. Additionally, Plaintiff alleges that Defendants Carvajal, Karpiene, Paz, and Dumangcus refused or negligently failed to request that Captain John Doe divert the *Imagination* to California so that Plaintiff could receive emergency medical care ashore, as the standard of care required Defendants Carvajal, Karpiene, Paz, and Dumangcus to do. In the alternative, pursuant to F.R.C.P. Rule 8(d)(2) & 8(d)(3), Plaintiff alleges that Defendants Carvajal, Karpiene, Paz, and Dumangcus asked Captain John Doe to request a helicopter evacuation for Plaintiff from the United States Coast Guard and/or that Captain John Doe divert the *Imagination* to the nearest U.S. port with a hospital, but Captain John Doe, after receiving one or both of the aforementioned requested, refused to request a helicopter evacuation for Plaintiff and/or refused to divert the *Imagination* to the nearest U.S. port with a hospital. The above refusal and neglect further caused irreparable harm to Plaintiff.

21. During the time in which Plaintiff was under the care of Defendants Carvajal, Karpiene, Paz, and Dumangcus, Defendants Carvajal, Karpiene, Paz, and Dumangcus attempted to obtain a complete blood count (CBC). However, the laboratory equipment in the *Imagination*'s medical facility was broken and unable to provide laboratory results. As such, Defendants Carvajal, Karpiene, Paz, and Dumangcus were never able to determine Plaintiff's complete blood count. All Defendants including Carnival knew that the

*Imagination's* laboratory equipment was broken before the *Imagination* departed the Port of Long Beach on Plaintiff's cruise, but the Defendants, including Carnival, refused and failed to have it repaired or replaced. Defendants, and each of them, did so with knowledge that a CBC is a critically important laboratory test, as a CBC reveals a patient's red blood cell count, white blood cell count, hemoglobin levels, hematocrit levels, and platelet levels. Each of these pieces of information is important medical information that is necessary for diagnosing and treating a patient's medical condition. By not obtaining Plaintiff's CBC, Defendants delayed Plaintiff's medical diagnosis and treatment and caused irreparable physical harm to Plaintiff.

22. Instead of being evacuated from the *Imagination*, Plaintiff remained in the *Imagination*'s medical facility until the *Imagination* docked at its scheduled time the following morning on September 29, 2016. On September 28, 2016, Plaintiff remained in an altered mental status and her physical condition continued to deteriorate, to the point where she went into severe sepsis and septic shock and began experiencing, *inter alia*, acute organ dysfunction, uremic encephalopathy (brain damage from acute kidney failure), and acute respiratory failure. Each of these conditions are life threatening medical conditions that require emergent medical attention.

23. On September 29, 2016, the *Imagination* docked at its scheduled time at the Port of Long Beach. Upon the *Imagination*'s arrival, Plaintiff's daughter (who was not a passenger aboard the *Imagination*) and paramedics met the *Imagination* at its dock. However, the *Imagination's* crew refused to release Plaintiff to paramedics who were waiting to take Plaintiff to an acute care hospital. Instead, the crew held Plaintiff hostage and demanded

Plaintiff's daughter pay the balance of Plaintiff's medical bill aboard the *Imagination* before permitting paramedics to take Plaintiff to the hospital. This conduct occurred when Plaintiff was near death. This delay further injured Plaintiff, as it delayed Plaintiff from receiving life-saving medical treatment ashore.

## COUNT 1

## MEDICAL NEGLIGENCE

(Direct Negligence against Defendants Carvajal, Karpiene, Paz, and Dumangcus; Vicarious Liability against Carnival)

24. Plaintiff hereby readopts and re-alleges each and every allegation in Paragraphs 1-23.

25. Defendant Carvajal owed Plaintiff a duty to use the degree of skill, knowledge, and care in the diagnosis and treatment of Plaintiff that other reasonably careful physicians would use in the same or similar circumstances.

26. Defendants Karpiene, Paz, and Dumangcus owed Plaintiff a duty to use the degree of skill, knowledge, and care in the diagnosis and treatment of Plaintiff that other reasonably careful nurses would use in the same or similar circumstances.

27. Defendants Carvajal, Karpiene, Paz, and Dumangcus breached their duty of care to Plaintiff by:

    a.  Refusing or failing to properly assess Plaintiff's condition.

    b.  Refusing or failing to timely diagnose and treat Plaintiff's condition.

    c.  Refusing or failing to provide appropriate medication to Plaintiff.

d.  Refusing or failing to order appropriate diagnostic scans to assess Plaintiff's condition.

e.  Refusing or failing to obtain consultations from appropriate medical specialists ashore.

f.  Refusing or failing to properly monitor Plaintiff while she was under their care.

g.  Deviating from the standard of care required for patients who present with Plaintiff's signs and symptoms.

h.  Refusing or failing to ensure Plaintiff received required emergency disembarkation from the ship upon arrival to the Port of Long Beach.

28. In addition to the allegations contained in paragraph 20, Plaintiff further alleges that Defendants Carvajal, Karpiene, Paz, and Dumangcus negligently cared for her by failing to request that Captain John Doe contact the United States Coast Guard to request a helicopter evacuation or other evacuation for Plaintiff, as the standard of care required of Defendants Carvajal, Karpiene, Paz, and Dumangcus to do. Additionally, Plaintiff alleges that Defendants Carvajal, Karpiene, Paz, and Dumangcus negligently failed to request that Captain John Doe divert the *Imagination* to California so that Plaintiff could receive emergency medical care ashore, as the standard of care required Defendants Carvajal, Karpiene, Paz, and Dumangcus to do. In the alternative, pursuant to F.R.C.P. Rule 8(d)(2) & 8(d)(3), Plaintiff alleges that Defendants Carvajal, Karpiene, Paz, and Dumangcus asked Captain John Doe to request a helicopter evacuation or other evacuation for Plaintiff from the United States Coast Guard and/or that Captain John Doe divert the *Imagination* to the nearest U.S. port with a hospital, but Captain John Doe, after receiving one or both of the

aforementioned requested, refused to request a helicopter evacuation or other evacuation for his critically ill passenger and/or refused to divert the *Imagination* to the nearest U.S. port with a hospital.

29. As a result of negligence of Defendants Carvajal, Karpiene, Paz, and Dumangcus, Plaintiff was actually and proximately harmed. Specifically, Plaintiff sustained catastrophic physical injuries, including severe sepsis, acute organ dysfunction, and acute respiratory failure, and incurable quadriplegia.

30. Defendants Carvajal, Karpiene, Paz, and Dumangcus were at all times mentioned herein actual agents of Defendant Carnival acting within the course and scope of their actual agency. Carnival appointed Defendants Carvajal, Karpiene, Paz, and Dumangcus as its actual agents and Carnival acknowledged Defendants Carvajal, Karpiene, Paz, and Dumangcus as its actual agents; Defendants Carvajal, Karpiene, Paz, and Dumangcus accepted their status as Carnival's agents; and, Carnival retained control over the actions of Defendants Carvajal, Karpiene, Paz, and Dumangcus.

31. In addition, Defendants Carvajal, Karpiene, Paz, and Dumangcus were apparent agents of Carnival acting within the course and scope of their apparent agency. Carnival represented Defendants Carvajal, Karpiene, Paz, and Dumangcus as its agents; Plaintiff reasonably believed that that Defendants Carvajal, Karpiene, Paz, and Dumangcus were authorized to act for Carnival's behalf and for its benefit; and, Plaintiff was induced to detrimentally rely upon the appearance of agency between Carnival and Defendants Carvajal, Karpiene, Paz,

and Dumangcus.

32. As a result of the negligence as set forth above, the Plaintiff was injured about her body (internal and external) and extremities, including severe physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, disfigurement, aggravation of any previously existing conditions. Additionally, she has incurred medical expenses in the past and future, in the care and treatment of her injuries including future attendant and nursing care 24 hours a day, seven days a week for the rest of her life, suffered physical handicap, lost wages, income lost in the past and her future ability to earn income has been impaired.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendants and demands jury trial of all issues so triable.

## COUNT 2

## NEGLIGENCE

(Direct Negligence against Defendant Carnival)

33. Plaintiff hereby readopts and re-alleges each and every allegation in Paragraphs 1-32.

34. Carnival owed Plaintiff a duty to exercise reasonable care under the circumstances. This

duty includes a duty to furnish such aid and assistance as an ordinarily prudent person would render under similar circumstances.

35. Carnival breached its duty of care by failing to evacuate Plaintiff from the *Imagination* to an acute care hospital on September 28, 2016, or divert the *Imagination* to the nearest U.S. port with a hospital so that Plaintiff could receive medical attention ashore. Carnival further breached its duty of care on September 29, 2016, when the *Imagination*'s crew held Plaintiff hostage and intentionally delayed Plaintiff's transfer from the *Imagination* to paramedics waiting at the Port of Long Beach to take Plaintiff to the hospital by requiring Plaintiff's daughter to pay Plaintiff's onboard medical bill before releasing Plaintiff to her daughter and waiting paramedics. This conduct delayed critical emergency medical care and further damaged Plaintiff

36. Plaintiff further alleges that Carnival also owed a duty to maintain the medical equipment in the *Imagination*'s medical center in working and ready condition.

37. Carnival breached its duty of care to by failing to inspect and repair the laboratory equipment necessary to provide the *Imagination*'s medical staff, including Defendants Carvajal, Karpiene, Paz, and Dumangcus, with a complete blood count (CBC) and other diagnostic findings for Plaintiff.

38. As a result of negligence of Carnival Plaintiff was actually and proximately harmed. Specifically, Plaintiff sustained catastrophic physical injuries, including severe sepsis, acute organ dysfunction, acute respiratory failure, and incurable quadriplegia.

39. As a result of the negligence as set forth above, the Plaintiff was injured about her body (internal and external) and extremities, including severe physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, disfigurement, aggravation of any previously existing conditions. Additionally, she has incurred medical expenses in the past and future, in the care and treatment of her injuries including future attendant and nursing care 24 hours a day, seven days a week for the rest of her life, suffered physical handicap, lost wages, income lost in the past and her future ability to earn income has been impaired.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendants and demands jury trial of all issues so triable

## COUNT 3

## NEGLIGENCE

(Direct Negligence against Defendant Captain John Doe)

40. Plaintiff hereby readopts and re-alleges each and every allegation in Paragraphs 1-39.

41. Captain John Doe was the Master of the *Imagination* and an agent of Carnival acting within the course and scope of his agency at all times material hereto. Captain John Doe became the master of the *Imagination* after Carnival appointed him as its agent in the capacity of the *Imagination's* Master. Captain John Doe thereafter accepted Carnival's appointment as

the *Imagination*'s Master. Captain John Doe remained under Carnival's control as Master of the *Imagination*.

42. As Master of the *Imagination*, Captain John Doe was subject to Carnival's control. The control that Carnival exercised over him included, but is not limited to:

   a. Carnival's direction as to which ports of call the *Imagination* would visit, what time the *Imagination* would arrive to its ports of call, what time the *Imagination* would depart the port of calls, and which route the *Imagination* would sail between ports.

   b. Carnival's directives regarding the safe navigation and operation of the *Imagination*, which Captain John Doe was required to follow, as set forth in written orders, guidelines, policies, procedures, and/or protocols from *Carnival*.

   c. Carnival's directives regarding the safety of the *Imagination's* passengers, which Captain John Doe was required to follow, as set forth in written orders, guidelines, policies, procedures, and/or protocols from *Carnival*.

   d. Carnival's requirement that Captain John Doe wear uniforms identifying him as Master of the *Imagination*, which were furnished to Captain John Doe by Carnival. The uniforms provided by Carnival to Captain John Doe identified him as an employee of Carnival. For example, Captain John Doe wore a nametag bearing Carnival's name and/or logo.

e.   Carnival retained the right to terminate Captain John Doe's employment with Carnival at any time and without cause.

43. As Master of the *Imagination*, Captain John Doe was provided senior officer benefits, including, senior officer status, round-trip transportation from residence to the ship, uniforms, indemnification, health care, meals, and a private furnished cabin with refrigerators, telephones, computers with internet access, and daily housekeeping services. Additionally, Carnival paid Captain John Doe a regularly monthly salary.

44. Captain John Doe was considered to be a member of the *Imagination*'s crew, and was represented as such to immigration authorities and passengers. Additionally, Captain John Doe was introduced to immigration authorities and passengers as the *Imagination*'s Master.

45. In addition, Captain John Doe was an apparent agent of Carnival acting within the course and scope of his apparent agency. Carnival represented Captain John Doe was one as its agents; Plaintiff reasonably believed that that Captain John Doe was authorized to act on Carnival's behalf and for Carnival's benefit; and, Plaintiff was induced to detrimentally rely upon the appearance of agency between Carnival and Captain John Doe. More specifically, Plaintiff believed that because Captain John Doe was Carnival's agent, he would exercise reasonable care ensure her safety and, if necessary, call for a helicopter evacuation or other evacuation or divert the *Imagination* to the closest American port with a hospital if she became sick or injured.

46. Captain John Doe, as Master of the *Imagination*, owed Plaintiff a duty to exercise

*COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL - 20*

reasonable care under the circumstances. This duty includes a duty to furnish such aid and assistance as an ordinarily prudent person would render under similar circumstances.

47. Captain John Doe breached his duty to Plaintiff by:

    a.  Negligently failing to monitor and review the care being provided to Plaintiff by Defendants Carvajal, Karpiene, Paz, and Dumangcus.

    b.  Negligently failing to inform himself of Plaintiff's condition and negligently failing to recognize that Plaintiff required immediate emergency medical care at the closest U.S hospital.

    c.  Failing to ensure that the medical and laboratory equipment on board the *Imagination* could perform a complete blood count (CBC) reading.

    d.  Refusing and negligently failing to arrange for and/or order the immediate evacuation and transfer of Plaintiff to an onshore hospital as soon as the ship reached the Port of Long Beach on September 29, 2016, even though he knew or in the exercise of reasonable care should have known she was critically ill and required immediate medical care. Instead, he allowed his crew to hold Plaintiff hostage while the crew demanded Plaintiff's daughter first pay Plaintiff's onboard medical bill. This occurred while Plaintiff was unconscious and near death. This conduct by Captain John Doe and the *Imagination's* crew delayed critical emergency medical care and further damaged Plaintiff.

e.  Pursuant to F.R.C.P. Rule 8(d)(2) & 8(d)(3), Plaintiff alleges in the alternative that Captain John Doe refused or negligently failed to request a helicopter evacuation for Plaintiff or refused or negligently failed to divert the *Imagination* to the nearest American port with a hospital, after receiving a request and recommendation from Defendants Carvajal, Karpiene, Paz, and Dumangcus to do so for his critically ill passenger.

48. As a result of Captain John Doe's negligence, Plaintiff was actually and proximately harmed. Specifically, Plaintiff sustained catastrophic physical injuries, including severe sepsis, acute organ dysfunction, acute respiratory failure, and incurable quadriplegia.

49. As a result of the negligence as set forth above, the Plaintiff was injured about her body (internal and external) and extremities, including severe physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, disfigurement, aggravation of any previously existing conditions. Additionally, she has incurred medical expenses in the past and future, in the care and treatment of her injuries including future attendant and nursing care 24 hours a day, seven days a week for the rest of her life, suffered physical handicap, lost wages, income lost in the past and her future ability to earn income has been impaired.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendants and demands jury trial of all issues so triable

## COUNT 4

## NEGLIGENT HIRING AND RETENTION

(Direct Liability against Defendant Carnival)

50. Plaintiff hereby readopts and re-alleges each and every allegation in Paragraphs 1-49.

51. Carnival had a duty to select a competent and duly qualified physician if it decided to provide a physician for passengers aboard the *Imagination*.

52. Defendant Carvajal was not a competent and duly qualified physician.

53. Carnival breached its duty to select a competent and qualified physician for Plaintiff's voyage aboard the *Imagination*. Specifically, Carnival knew or should have known that Defendant Carvajal was not a competent and qualified physician. Nevertheless, Carnival selected Defendant Carvajal to serve as the *Imagination's* physician on Plaintiff's cruise.

54. Prior to Plaintiff's cruise, Carnival was aware of an incident involving Defendant Carvajal in February 2016 aboard another ship owned by Carnival, the *M/S Carnival Freedom*. During this incident, Defendant Carvajal's negligently delayed treatment and thereafter provided negligent medical treatment to a passenger aboard the *M/S Carnival Freedom*. Specifically, during this incident, Defendant Carvajal:

    a.  Refused to provide appropriate antibiotics to the passenger suffering from

diverticulitis, despite the passenger's son (a licensed American physician) offering to prescribe the antibiotics himself.

b. Delayed personally evaluating the passenger complaining of signs and symptoms consistent with diverticulitis, even though the passenger's son advised Defendant Carvajal that he believed his father was experiencing diverticulitis.

c. Refused to evacuate the passenger ashore via helicopter for proper treatment, despite multiple requests from the passenger's physician son, the passenger's deteriorating condition, and advisements from the passenger's physician son that his father was experiencing a medical emergency.

d. Delayed releasing the passenger to paramedics once the *M/S Carnival Freedom* returned the following day to port in Galveston, Texas.

e. Delayed the passenger's transportation from the *M/S Carnival Freedom* to the University of Texas Medical Branch by telling paramedics that the passenger's condition was not a medical emergency, even though it was, which caused the paramedics to not transport the passenger with lights and sirens to the hospital.

55. Each of Defendant Carvajal's actions or omissions described in paragraph 51 were below the standard of care for a physician and therefore constituted medical negligence. As such, Defendant Carvajal is an incompetent physician.

56. Following the incidents described in paragraph 51, Carnival learned of the events described therein. Carnival knew or should have known that Defendant Carvajal's care and treatment of the passenger was medically negligent and an extreme departure from the standard of care and that Defendant Carvajal was an incompetent physician.

57. Despite learning of the events described in paragraph 51, Carnival chose not to terminate Defendant Carvajal's employment. Instead, Carnival employed Defendant Carvajal to continue serving as a physician aboard its cruise ships, including the *Imagination* during Plaintiff's cruise. Carnival's decision breached its duty to provide Plaintiff with a competent and qualified physician.

58. As a result of Carnival's selection of Defendant Carvajal to serve as the *Imagination's* physician during Plaintiff's cruise, Plaintiff received negligent medical care from her. As outlined in paragraph's 1-23, Defendant Carvajal's care and treatment of Plaintiff was below the standard of care. If Carnival had refused to allow Defendant Carvajal to serve as the *Imagination's* physician, and chosen another physician to serve on the *Imagination* who was competent, it is likely that Plaintiff would have received medical care that was within the standard of care, including, but not limited to, an emergency evacuation from the *Imagination* to a hospital ashore.

59. As an actual and proximate result of Carnival's breach of its duty to provide Plaintiff with a competent and qualified physician, Plaintiff was actually and proximately harmed. Specifically, Plaintiff sustained catastrophic physical injuries, including severe sepsis, acute

organ dysfunction, acute respiratory failure, and incurable quadriplegia.

60. As a result of the negligence as set forth above, the Plaintiff was injured about her body (internal and external) and extremities, including severe physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, disfigurement, aggravation of any previously existing conditions.  Additionally, she has incurred medical expenses in the past and future, in the care and treatment of her injuries including future attendant and nursing care 24 hours a day, seven days a week for the rest of her life, suffered physical handicap, lost wages, income lost in the past and her future ability to earn income has been impaired.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendants and demands jury trial of all issues so triable

## **PRAYER FOR RELIEF AS TO ALL COUNTS AND DEFENDANTS**

WHEREFORE, Plaintiff Requests:

That judgment be entered against Defendants for damages recoverable by law including, but not limited to all past and future economic damages and all past and future general damages. Including but not limited to; damages for injuries to the Plaintiff's body (internal and external) and extremities, severe physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, disfigurement, aggravation of any previously existing conditions.

Additionally, all medical expenses in the past and future, in the care and treatment of her injuries including future attendant and nursing care 24 hours a day, seven days a week for the rest of her life, physical handicap, lost wages, income lost in the past and her future ability to earn income has been impaired. For all court costs and interest authorized by law, including interest from the date of the negligence through trial including pre and post Judgment interest.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendants and demands jury trial of all issues so triable.

MORGAN & MORGAN, P.A.

DATED: September 2?, 2017

By: _____
ADAM BRUM
KEITH R. MITNIK
Attorneys for Plaintiff Aleah Jordan

**Adam Brum, Esq.**
Morgan & Morgan, P.A.
5544 Central Avenue
St. Petersburg, FL 33707
Telephone: (727) 318-6344
Facsimile: (727) 318-6374
abrum@forthepeople.com
cmarckese@forthepeople.com
Florida Bar # 999512

**Keith R Mitnik, Esq.**
Morgan & Morgan, P.A.
P.O. Box 4979
Orlando, FL 32802
Telephone: (407) 849-2383
Facsimile: (407) 245-3381
kmitnik@forthepeople.com
marnold@forthepeople.com
Florida Bar # 436127

**Moseley C. Collins III (CA SBN 092460)\***
**John J. Kinney III (CA SBN 300216)\***
MOSELEY COLLINS LAW
A PROFESSIONAL LAW CORPORATION
1180 Iron Point Road, Suite 180
Folsom, CA 95630
Telephone: (916) 444-4444
Facsimile: (916) 444-0001
moseley@moseleycollins.com
john@moseleycollins.com

*\*Pro Hac Vice* Pending

*COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL - 27*