UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

ALEAH JORDAN,

      Plaintiff,

v.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINE, CATALINE
CARVAJAL, M.D., LOLITA KARPIENE,
MICHELLE PAZ, RONALD DUMANGCUS,
and CAPTAIN JOHN DOE,

      Defendants.

CASE NO. 1:17-cv-23460-DPG

## **DEFENDANT CARNIVAL CORPORATION'S OMNIBUS MOTION IN LIMINE, AND SUPPORTING MEMORANDUM OF LAW**

Christopher E. Knight
Fla. Bar No. 607363
Email: cknight@fowler-white.com
Marc J. Schleier
Fla. Bar No. 389064
Email: mschleier@fowler-white.com
Amanda A. Kessler
Fla. Bar No. 60885
Email: aaltman@fowler-white.com

FOWLER WHITE BURNETT, P.A.
*Attorneys for Defendant Carnival
Corporation*
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida  33131
Telephone:    (305) 789-9200
Facsimile:    (305) 789-9201

Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES (hereinafter "CCL"), by and through undersigned counsel, hereby files this Omnibus Motion in Limine, and Supporting Memorandum of Law.  As grounds therefor, CCL states:

## INTRODUCTION AND FACTUAL BACKGROUND

1.     This action arises out of medical care and treatment provided to Plaintiff, Aleah Jordan, while she was a passenger aboard the *Carnival Imagination* cruise ship in September of 2016.  [D.E. 13 at ¶¶ 2, 6].

2.     Plaintiff alleges that, during the subject cruise, she presented to the ship's medical facility with abnormally low oxygen saturation levels, an abnormally high respiratory rate, and abnormally high blood glucose levels and was somnolent, incoherent, tachycardic, and unable to stand up.  [*Id.* at ¶ 8].  Plaintiff alleges that ship physician Catalina Carvajal, M.D. diagnosed her as suffering from an altered mental state, acute kidney failure, uremic encephalopathy, and sepsis. [*Id.* at ¶ 8].  Plaintiff alleges that Dr. Carvajal and Nurses Lolita Karpiene, Michelle Paz, and Ronald Dumangcus negligently assessed, diagnosed, and treated her condition.  [*Id.* at ¶ 9]. Plaintiff also alleges that each of the individual Defendants negligently failed to request a helicopter evacuation for her to receive emergency medical care ashore and that the laboratory equipment in the ship's medical facility was broken and unable to provide laboratory results.  [*Id.* at ¶¶ 10-11, 14].  Plaintiff alleges that she suffered physical injuries and mental and emotional anguish as a result of the alleged negligence set forth above.  [*Id.* at ¶¶ 22, 28, 34, 40, 54, 68, 75, 81, 113].  Plaintiff has brought various negligence claims against CCL in the First Amended Complaint.[1]  [D.E. 13].

_____

[1]  Plaintiff also asserted negligence claims in her First Amended Complaint against Dr. Carvajal (Count 1), Nurse Karpiene (Count 2), Nurse Paz (Count 3), Nurse Dumangcus (Count 4), and "Captain John Doe" (Count 9), but did not serve any of the foregoing individuals.  This Court has dismissed each of the individual defendants from this action.  [D.E. 89, 104].

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

3.     For the reasons stated below, this Court should (1) preclude and exclude all evidence, testimony, and argument concerning other claims or incidents involving Dr. Carvajal; (2) preclude and exclude any testimony by Patrick Fullerton, D.O. concerning the level of care provided by Dr. Carvajal; (3) preclude and exclude all evidence, testimony, and argument concerning the gross amounts billed for medical care provided to Plaintiff; (4) preclude and exclude all cumulative expert testimony; (5) exclude testimony by Plaintiff's experts regarding areas beyond their expertise; (6) preclude and exclude all evidence, testimony, and argument of corporate/shareholder financial condition/wealth and the economic disparity between the parties; and (7) preclude and exclude all evidence, testimony, and argument concerning Plaintiff's alleged past lost wages and future loss of earning capacity.

## MEMORANDUM OF LAW

### I.  Preclude and Exclude All Evidence, Testimony, and Argument at Trial Concerning Other Claims or Incidents Involving Dr. Carvajal

Based upon the allegations in the First Amended Complaint and the discovery requests propounded by Plaintiff in this action, CCL anticipates that Plaintiff intends to introduce evidence at trial regarding claims or incidents involving Dr. Carvajal unrelated to the care and treatment provided to Plaintiff.  Plaintiff alleges in the First Amended Complaint that, prior to Plaintiff's cruise, Dr. Carvajal negligently delayed treatment and provided negligent medical treatment to a passenger aboard the *Carnival Freedom*.  [D.E. 13 at ¶ 107].  Specifically, Plaintiff alleges that Dr. Carvajal (a) refused to provide appropriate antibiotics to the passenger suffering from diverticulitis, (b) delayed personally evaluating the passenger, (c) refused to evacuate the passenger ashore via helicopter for proper treatment, (d) delayed releasing the passenger to paramedics once the ship returned to port, and (e) delayed the passenger's transportation to the hospital.  [*Id.*].  Plaintiff thereafter propounded a request to produce to CCL seeking documents the medical care and treatment rendered by Dr. Carvajal to the passenger, Sami Gharfeh [*See*

- 3 -

Plaintiff's Second Request to Produce to Defendant Carnival Corporation, attached hereto as Ex. 1], to which this Court ordered CCL to respond.  [D.E. 45].

Rule 401 of the Federal Rules of Evidence provides that "[e]vidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  An evidentiary proposition is considered to be "relevant" only if it is logically related, either directly or through an inferential chain of proof, to at least one of the formal elements of the charges made or defenses raised in the case – e.g., a material proposition of fact.  *See Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 138 F. Supp. 2d 357, 365 (E.D.N.Y. 2001).  Rule 402 provides that "[i]rrelevant evidence is not admissible."  Significantly, given that relevancy in the discovery context is much broader than in the trial context, evidence is not admissible at trial merely because it was produced during discovery.  *See Lincoln Nat'l Life Ins. Co. v. Biviano*, No. 09-82447-CIV-MARRA/JOHNSON, 2011 WL 13108073, at *6 (S.D. Fla. Apr. 13, 2011) ("Discovery . . . is much broader than admissibility in that information can be relevant and, therefore, discoverable even if not admissible at trial, so long as the information sought is reasonably calculated to lead to the discovery of admissible evidence."); *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, No. 01-0392-CIV-GOLD, 2001 WL 34079319, at *2 (S.D. Fla. Nov. 1, 2001) ("The Courts have long held that relevance for discovery purposes is much broader than relevance for trial purposes.").

Here, evidence regarding other claims or incidents involving Dr. Carvajal does not make any material proposition of fact more or less probable than it would be without the evidence.  Each of Plaintiff's claims against CCL pertaining to Dr. Carvajal sounds in negligence and requires a determination to be made by the jury as to whether either CCL or Dr. Carvajal breached a duty owed to Plaintiff under the circumstances of this case.  The mere fact that a claim was brought by another passenger arising out of care and treatment provided by Dr. Carvajal in a CCL medical

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

center does not make it any more likely that CCL and/or Dr. Carvajal breached any duty to Plaintiff. Further demonstrating the irrelevance of any such evidence is the fact that ***no*** determination was ever made in the *Gharfeh* action that Dr. Carvajal deviated from the standard of care. Accordingly, because evidence of other claims and incidents is irrelevant to this action, it is inadmissible and should be excluded.

In any event, regardless of whether Plaintiff could establish that such evidence is relevant, it should be excluded under Rule 404(b) of the Federal Rules of Evidence. Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." In the Eleventh Circuit, a two-part test governs the admissibility of Rule 404(b) evidence. *See Brown v. Davis*, 656 F. App'x 920, 922 (11th Cir. 2016); *Luka v. City of Orlando*, 382 F. App'x 840, 842 (11th Cir. 2010). Under this test, a court must first determine whether evidence of other acts is relevant to an issue other than the defendant's character. *See Lanham*, 805 F.2d at 972. Second, if the evidence is relevant to an issue other than a defendant's character, the evidence must comport with Rule 403 – it must possess probative value that is not substantially outweighed by its undue prejudice, and must not confuse the issue, mislead the jury, or waste time. *Id.*

In accordance with Rule 404(b), evidence relating to the treatment of other passengers is not admissible to establish that CCL or Dr. Carvajal was negligent in the instant case. *See, e.g., Bair v. Callahan*, 664 F.3d 1225, 1229 (8th Cir. 2012) ("Evidence concerning Callahan's past treatment of other patients is not admissible under Rule 404(b)."); *Velazquez v. UHS of Puerto Rico, Inc.*, No. 13-1581 (MEL), 2015 WL 477198, at *2 (D.P.R. Feb. 5, 2015) (precluding plaintiff from mentioning or asking questions at trial under Rule 404(b) about prior cases in which physician had been sued and noting that, "[i]f offered to prove that Dr. Cortes was negligent on the occasion at issue in the case of caption, evidence that other individuals have claimed that Dr.

- 5 -

Cortes provided negligent medical care speaks directly to his propensity to offer negligent care, weighing strongly against admissibility for that purpose"); *see also Cerniglia v. French*, 816 So. 2d 319, 322-25 (La. Ct. App. 2002) (holding that evidence of prior similar acts was not proof of medical malpractice or whether the doctor lacked the proper degree of knowledge or skill); *Jones v. Tranisi*, 326 N.W.2d 190, 192 (Neb. 1982) (holding that evidence of prior similar act was not relevant for the purpose of proving doctor's negligence in performing operation at issue on particular occasion); *Laughridge v. Moss*, 294 S.E.2d 672, 674 (Ga. Ct. App. 1982) (holding that the trial court did not err in disallowing evidence of alleged previous act of medical malpractice against defendant, noting that the general rule in a suit for negligence is that evidence or similar acts or omissions on other and different occasions is not admissible).

Therefore, Plaintiff is not permitted to introduce evidence relating to the *Gharfeh* claim to show that CCL and Dr. Carvajal have a propensity to deliver negligent care.  And such evidence cannot reasonably be used for any of the other purposes enumerated in Rule 404(b)(2), i.e. "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  As the Eighth Circuit explained in *Bair*, *supra*, other instances of alleged malpractice do not prove the kind of "knowledge" that Rule 404(b) contemplates:

> In reality, Dr. Callahan had the knowledge to perform the surgery [because Dr. Callahan had the requisite training, experience, and board certification as an orthopedic surgeon]:  the real question was whether Dr. Callahan applied his knowledge competently [in Bair's surgery] . . . [The appellants'] evidence ran more to showing lack of competence or care – that is, malpractice – with respect to other patients.  From such evidence, the jury could infer that Dr. Callahan had a propensity to commit malpractice by misplacing pedicle screws and thus may or perhaps must have committed similar malpractice in the surgery to Mr. Bair.

664 F.3d at 1229 (quoting *Bair v. Callahan*, 775 F. Supp. 2d 1163, 1171 (D.S.D. 2011)).

Even if the term "knowledge" could be construed as including "notice" of a worker's allegedly negligent other acts, evidence of prior incidents "is only admissible if conditions

Fowler White Burnett P.A. • Brickell Arch, 1395 Brickell Avenue, 14th Floor, Miami, Florida 33131 • (305) 789-9200

substantially similar to the occurrence caused the prior accidents, and the prior incidents were not too remote in time." *Hessen v. Jaguar Cars, Inc.*, 918 F.2d 641, 649 (11th Cir. 1990).  The plaintiff has the burden of showing substantial similarity between prior incidents and her own.  *See Croskey v. BMW of N. Am., Inc.*, 532 F.3d 511, 518 (6th Cir. 2008); *Marshall v. Royal Caribbean Cruises Ltd.*, No. 0:16-cv-21140-KMM, 2017 WL 5308902, at *9 (S.D. Fla. Jan. 6, 2017).  A plaintiff must give more than "cursory factual accounts" for a prior incident to be considered substantially similar.  *See Edwards v. Consolidated Rail Corp.*, 567 F. Supp. 1087, 1106 n.29 (D.C.D. 1983); *see also Rye v. Black & Decker Mfg. Co.*, 889 F.2d 100, 102 (6th Cir. 1989) (finding that district court did not abuse its discretion in excluding prior incidents where plaintiff did not provide sufficient facts for the district court to find that the circumstances were substantially similar to those in plaintiff's case).  Plaintiff has failed to do so here.

Even assuming *arguendo* that Plaintiff could establish one of the exceptions to the prohibition on the use of "other act[s]" contained in Rule 404(b)(2), such evidence should be excluded because the prejudicial effect of allowing evidence of any other claims or incidents involving Dr. Carvajal substantially outweighs any probative value under Rule 403 of the Federal Rules of Evidence.  Rule 403 provides for the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  For purposes of Rule 403, the term "unfair prejudice" is defined as an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. *See U.S. v. Hooks*, 147 F. App'x 956, 957-58 (11th Cir. 2005); *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003).  That is precisely what would occur here should the evidence be allowed.  Where, as here, a plaintiff seeks to introduce "other acts" evidence to prove that a defendant characteristically acted in a negligent manner and acted in conformity with that

- 7 -

characteristic in this case, the unfair prejudice of such evidence substantially outweighs any possible probative value thereof.  As the court stated in *Velazquez*, *supra*:

> The fact that allegations were made in prior lawsuits, without more, has little probative value to show negligence on the part of Dr. Cortes or UHS on the occasion at issue in the amended complaint in the above-captioned case. . . . While the probative value is low, the potential for prejudice from asking Dr. Cortes about prior medical malpractice cases he has been involved with in the past, by leading the jury to believe that Dr. Cortes simply is a negligent medical practitioner on the whole – as opposed to that he did not meet the applicable standard of care in this case – is high.  The minimal probative value stemming from the fact that other malpractice suits have been filed against Dr. Cortes in the past simply does not overcome the potential prejudicial effect of this evidence.

2015 WL 477198, at *2.  Even if Plaintiff could establish that such evidence satisfies one of the exceptions set forth in Rule 404(b), any minimal probative value of the evidence for that purpose would be substantially outweighed by the real possibility that the jury may also improperly and unfairly rely on such evidence in reaching a verdict on Plaintiff's claims that Dr. Carvajal was negligent in her medical care and treatment of Plaintiff.  Therefore, such evidence should be excluded under Rule 403.

Additionally, Plaintiff's "other acts" evidence should be excluded under Rule 403 to avoid confusing the issues, misleading the jury, and causing undue delay.  As the court explained in the district court order in *Bair*, *supra*, if such evidence is admitted, there would be mini-trials about any other claims or incidents.  A mini-trial regarding the *Gharfeh* claim would risk distracting the jury with competing evidence on allegations made by another passenger/patient.  CCL would further submit that admission of "other acts" evidence would open the door to CCL to present evidence of all of the successful care and treatment provided by Dr. Carvajal.  Given that the jury should only be focusing on, and determining, whether the applicable standard of care was met in this particular case, the danger of confusion of issues, misleading the jury, and potential undue delay substantially outweigh any probative value of Plaintiff's "other acts" evidence.

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

Accordingly, based upon the application of Rule 404(b)'s two-part test, evidence regarding other claims or incidents involving Dr. Carvajal unrelated to the care and treatment provided to Plaintiff should be excluded.

## II.  Preclude and Exclude Any Testimony by Patrick Fullerton, D.O. Concerning the Level of Care Provided by Dr. Carvajal

As a threshold matter, CCL's former medical director, Patrick Fullerton, D.O. – who was terminated by CCL in March of 2016, six (6) months before the subject medical care [Dep. P. Fullerton at 85:23-86:10, excerpts attached as Ex. 2] – should not be permitted to testify at trial regarding the care provided by Dr. Carvajal to Plaintiff.  Not only was Dr. Fullerton no longer working for CCL when Dr. Carvajal treated Plaintiff, he did not review Plaintiff's medical records. [*Id.* at 85:15-16].  Undersigned counsel has conferred with Plaintiff's counsel, who agrees that any such testimony should be excluded.

In addition, this Court should also exclude any testimony by Dr. Fullerton regarding his opinions as to Dr. Carvajal's competency to provide medical care to patients when he worked for CCL.  Dr. Fullerton testified that there was only one occasion – which occurred approximately four or five years before his February 19, 2019 deposition – where he witnessed Dr. Carvajal providing hands-on care to patients, and he did not recall anything specific regarding the care provided.  [*Id.* at 100:14-102:16].  Nevertheless, Dr. Fullerton testified that he did not believe that Dr. Carvajal was competent to:  treat seriously ill patients on a CCL ship; manage a ventilator, intubate, do a cardiac resuscitation, or recognize serious injury or illness; diagnose and treat a patient with sepsis; manage a critically ill patient; manage a patient with acute kidney failure; or manage uremic encephalopathy.  [*Id.* at 39:17-40:8, 65:22-66:19].

Dr. Fullerton's conclusions relating to Dr. Carvajal's competency to provide the medical care described above is an impermissible lay opinion.  As the Eleventh Circuit has stated, "the opinion of a lay witness on a matter is admissible only if it is based on first-hand knowledge or

- 9 -

observation." *U.S. v. Perez*, 625 F. App'x 919, 922 (11th Cir. 2015) (citation omitted). On the other hand, lay opinions that are "speculative," "conclusory" and not rationally based on the witness' perception should not be admitted. *See French Cuff, Ltd. v. Markel Am. Ins. Co.*, No. 07-60006-CIV-LENARD/GARBER, 2010 WL 11504372, at *3 (S.D. Fla. Feb. 8, 2010); *see also Grady v. BellSouth*, 160 F. App'x 863, 865 (11th Cir. 2005) (rejecting as speculative plaintiff's suggestion that her supervisor must have known of the specific requirements for promotion based on her experience); *Drake v. R.J. Reynolds Tobacco Co.*, No. 15-80021-CIV-COHN/SELTZER, 2015 WL 12746105, at *1 (S.D. Fla. Jan. 28, 2015) (excluding testimony from lay witnesses that "would be speculative testimony not rationally based on the witnesses' perception").

Here, Dr. Fullerton did not recall anything regarding the one occasion that he personally witnessed Dr. Carvajal provide medical care to patients. As such, Dr. Fullerton's conclusion that Dr. Carvajal was not competent to either provide medical care on the ship generally or to treat patients with the specific medical conditions referenced in his deposition is not rationally based on his perception. Rather, such testimony is speculative and conclusory[2], and it should be excluded.

Even if such testimony were admissible, it should be excluded under Rule 403 for the reasons stated in Section I. Any minimal probative value of such testimony would be substantially outweighed by the possibility that the jury may improperly and unfairly rely on such evidence in reaching a verdict on Plaintiff's claims that Dr. Carvajal was negligent.

### III. Preclude and Exclude All Evidence, Testimony, and Argument at Trial Concerning the Gross Amounts Billed for Plaintiff's Medical Care

CCL recognizes that general maritime law's collateral source rule bars a tortfeasor from mitigating damages "by setting off compensation received by the employee from an independent

---

[2] Further demonstrating that Dr. Fullerton's testimony was a net opinion is the fact that he ignored that Dr. Carvajal had the required three years of emergency room practice before working as a physician on the ship. [*Id.* at 115:19-116:25].

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

source." *Haughton v. Blackships, Inc.*, 462 F.2d 788, 790 (5th Cir. 1972). "[T]he rule operates to insure that a benefit to an injured party – from a third party – is not shifted as a windfall for the tortfeasor." *Sampson v. Carnival Corp.*, No. 15-24339-Civ-KING/TORRES, 2016 WL 11547654, at *2 (S.D. Fla. Dec. 9, 2016).  As such, CCL does not dispute that it cannot seek admission of, or reference to, benefits that Plaintiff received from third parties, such as insurance proceeds.

However, the collateral source rule does ***not*** allow a plaintiff to introduce medical bills which represent the total amount billed, rather than the amount that was actually paid.  *See Szczurko v. Celebrity Cruises, Inc.*, 1:15-cv-20592-UU, D.E. 41 at p. 2 (S.D. Fla. Dec. 30, 2015) (granting a cruise line's motion in limine to preclude a plaintiff from introducing evidence of medical charges written off by her providers and stating that "[t]he Court does not agree with Plaintiff that this issue invokes the collateral source rule as the collateral source rule is intended"). "To allow [a plaintiff] to introduce amounts billed by health care providers, rather than the amount actually paid, would result in a windfall to [a plaintiff], who actually never received a collateral source benefit for the amount billed." *Gaskin v. Carnival Corp.*, No. 1:13-cv-22911-KMM, D.E. 85 (S.D. Fla. Oct. 8, 2014).

In *Chimine v. Royal Caribbean Cruises Ltd.*, No. 16-23775-CV-MORENO/TURNOFF, 2017 WL 8809632 (S.D. Fla. Nov. 17, 2017), Royal Caribbean ("RCCL") filed a motion in limine seeking to preclude the plaintiff from presenting evidence of, or recover damages for, medical charges that were "written off." *Id.* at *2.  In its motion, RCCL urged that the plaintiff should only be permitted to present evidence for damages that were actually incurred – whether by the plaintiff or a collateral source. *Id.*  The court found instructive the case of *Sampson v. Carnival Corp.*, No. 1:15-cv-24339-JLK, D.E. 47 (S.D. Fla. Dec. 9, 2016), where "Carnival prevailed on a similar motion in limine" and "Magistrate Judge Torres reasoned that allowing Plaintiff to introduce evidence as to the amounts *billed by* the health care providers, as opposed to the amounts *paid*,

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

would result in a windfall to Plaintiff, who never actually received such a benefit." *Id.* (emphasis in original). Noting that "[c]ourts in this District have repeatedly reached the same conclusion on this issue[,]" the court granted RCCL's motion and excluded evidence of "written off" medical charges. *Id.*

Similarly, in *Diczok v. Celebrity Cruises, Inc.*, No. 16-21011-CIV-Seitz/Turnoff, 2017 WL 3206327 (S.D. Fla. July 26, 2017), the court held that the plaintiff could ***not*** recover the full unreduced amount of medical bills as economic damages and rejected plaintiff's argument that such a restriction would violate the collateral source rule:

> In opposing motions, the parties dispute over whether Diczok may claim damages for the full unreduced amount of medical bills incurred after his fall. Celebrity argues that Diczok may not recover any medical expenses that were not actually [paid] and, accordingly, moves to preclude Diczok from offering evidence of any medical expenses "written off" by his health care providers. In response, Diczok argues that such a restriction would violate the collateral source rule. However, the collateral source doctrine does not govern the amount of medical expenses a plaintiff may claim in damages. An abundance of case law in this District holds that, under general maritime law, recoverable medical expenses are limited [to] those actually paid by the plaintiff. *See, e.g., Szczurko v. Celebrity Cruises, Inc.*, Case No. 1:15-20592-CIV-UU [DE 41]; *Sampson v. Carnival Corporation*, Case No. 1:15-24339-CIV-JLK [DE 47]. Therefore, Celebrity's motion is GRANTED. To the extent Diczok contends in his own motion that he is entitled to recover the full amount of billed medical expenses, his motion is DENIED.

*Id.* at *3 (emphasis added).

Furthermore, in *Brown v. NCL (Bahamas) Ltd.*, No. 15-21732-CIV-Lenard/Goodman, 2016 WL 8730145, at *5 (S.D. Fla. Oct. 13, 2016), the court granted NCL's motion in limine to exclude the full amount of the medical expenses billed and limit damages evidence to the amount that was actually accepted as payment in full satisfaction of the bills. In response to the plaintiff's argument that NCL could not reduce its liability to the plaintiff because of payments made by third parties and collateral sources, NCL explained that its position was unrelated to the collateral source

rule; rather, it argued that the plaintiff should not be allowed to introduce evidence of medical bills

that do not represent the amounts actually paid by the plaintiff for her care, regardless of who paid

them.  *Id.*  In granting NCL's motion, the court relied on *Kellner v. NCL*, Case No. 15-23002-Civ-

Altonaga, D.E. 59 (S.D. Fla. May 20, 2016), in which Judge Altonaga granted in part NCL's

motion in limine and ordered that the plaintiff "may only introduce medical bills regarding

amounts actually paid.  Plaintiff's counsel can inform the jury that the doctor accepted only a

percentage of the original medical bill."  Consequently, the court in *Brown* limited "evidence of

Plaintiff's damages – insofar as they are determined by medical expenses – to the amounts actually

paid, regardless of the source of payment."  *Brown*, 2016 WL 8730145, at *5.

Recently, in *Gharfeh v. Carnival Corp.*, No. 17-20499-CIV-GOODMAN, 2019 WL

186864 (S.D. Fla. Jan. 14, 2019), the court determined that discounts or write-offs of a plaintiff's

medical bills do ***not*** constitute collateral sources, stating:

> Carnival readily acknowledges the applicability of the collateral
> source rule and agrees that it may not seek to admit, or refer to,
> benefits that Gharfeh received from third parties, such as insurance
> proceeds.  Carnival, however, argues that the collateral source rule
> does not permit a plaintiff to introduce medical bills representing the
> total amount *billed*, as opposed to the amount actually paid.
> Therefore, Carnival contends, a plaintiff cannot introduce evidence
> of "written off" or discounted medical charges – and that doing so
> would result in an impermissible windfall to Gharfeh, who never
> actually received such a benefit.
>
> *    *    *    *
>
> Here, Gharfeh may not introduce all of his medical bills.  Instead,
> he may introduce only the discounted bills.  Introducing all the
> medical bills without also providing simultaneous evidence of the
> discounts or write-offs would be unfairly prejudicial and would
> provide a skewed view of what constitutes reasonable medical
> expenses.  The jury needs to be advised of the discounts or write-
> offs in order to make a fair assessment of reasonable medical
> expenses.

2019 WL 186864, at *5, 8 (emphasis in original).  Two months ago, the court in *Underwood v.*

- 13 -

*NCL (Bahamas) Ltd.*, No. 17-24492-CV-WILLIAMS/TORRES, 2019 WL 1559026 (S.D. Fla. Apr. 10, 2019) found the analysis in *Gharfeh* compelling and held that "the collateral source rule [did] not preclude Norwegian from introducing evidence of the amount *paid* by Plaintiff for her alleged medical expenses, as opposed to the amount *billed*." *Id.* at *3-4 (emphasis in original).

Other courts in this district agree that amounts of medical bills which are written off or discounted do not constitute collateral sources which must be excluded under general maritime law. *See, e.g., Frauenthal v. Oceania Cruises, Inc.*, No. 15-21517-CIV-KING, 2016 WL 2962897 (S.D. Fla. May 19, 2016) (denying plaintiff's motion in limine to exclude evidence of collateral sources and any reductions of her medical bills which were a result of group medical insurance contracts); *Smith v. Royal Caribbean Cruises, Ltd.*, No. 13-20697-CIV-COOKE, 2014 WL 5312534, at *3 (S.D. Fla. Oct. 10, 2014) ("Defendant's Motion in *Limine* to limit the introduction of medical expenses, as evidence of damages, to the amount that plaintiff actually paid and exclude any reference to any other amounts billed or paid by collateral sources is GRANTED."); *Marsh v. Celebrity Cruises, Inc.*, No. 1:17-cv-21097-UU, D.E. 100 at p. 3 (S.D. Fla. Dec. 18, 2017) (granting Celebrity's motion in limine and precluding "evidence at trial of the gross amount billed by healthcare providers, rather than the amount actually paid"); *Geiger v. Carnival Corp.*, No. 1:16-cv-24753-FAM, D.E. 106 at p. 2 (S.D. Fla. Dec. 5, 2017) (denying plaintiff's motion in limine to preclude evidence concerning amounts written off for medical care); *Tercero v. Carnival Corp.*, No. 1:15-cv-21583-CIV-KING, D.E. 19 at p. 1 (S.D. Fla. Jan. 7, 2016) (granting Carnival's motion in limine to preclude plaintiff from presenting or claiming the medical charges written off by her healthcare providers; the court found that "the reasonable and customary cost of care for the medical services received by Plaintiff are the amounts which were actually paid by her or by a collateral source on her behalf, and evidence relating to other amounts which were written off are not relevant to this action."); *Szczurko*, *supra* ("The Court agrees with the abundant case law within

this District finding that Plaintiff is precluded from admitting evidence of the amount billed by healthcare providers, rather than the amount actually paid."); *Nappi v. Carnival Corp.*, No. 1:13-cv-21650-JLK, D.E. 51 at p. 2 (S.D. Fla. Oct. 22, 2014) (granting Carnival's motion to exclude evidence of medical charges written off by healthcare providers because such amounts were not collateral sources and not relevant); *Gaskin*, *supra* (denying plaintiff's motion in limine regarding collateral source benefits to the extent that the plaintiff sought to admit evidence of the amount billed by health care providers, rather than the amount actually paid); *see also Jarvis v. Carnival Corp.*, No. 16-cv-23727-MORENO/TURNOFF, D.E. 102 at p. 4 (S.D. Fla. July 31, 2017) (Turnoff, M.J.) (recommending that Carnival's motion in limine to preclude evidence of medical costs never incurred be granted and stating that, while the collateral source rule prohibits the introduction of evidence offered to show that a plaintiff has already been compensated for his/her injuries, "that does not translate into leave to introduce amounts *billed* by health care providers (e.g. doctors, hospitals, etc.), as opposed to the amounts that were *actually paid* out to them")" (emphasis in original), *adopted by*, D.E. 132 (S.D. Fla. Aug. 31, 2017) (Moreno, J.).[3]

As the numerous cases cited herein recognize, only the amounts of medical bills that represent the amounts actually ***paid*** by a third party for a plaintiff's medical care is a collateral source. Such cases correctly explain that no collateral source benefit is actually conferred for the amount billed but not paid and, thus, a plaintiff would obtain an improper windfall should he/she be allowed to recover damages for such amount. *See also Freeport Sulphur Co. v. S/S Hermosa*, 526 F.2d 300, 304 (5th Cir. 1976) (noting that the purpose of compensatory damages in maritime

---

[3] Given the myriad of Southern District of Florida cases in the last few years finding that only the amounts actually paid by a third party for a plaintiff's medical care (and not those amounts which are written-off or discounted) implicate the collateral source doctrine, the court in *Gharfeh* recognized that this appears to be the majority view. 2019 WL 186864, at *6-7. While some courts in this district have reached a different conclusion, CCL submits that the position taken in *Gharfeh* and the other cases cited in this response is better-reasoned and provides for a fairer result.

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

tort cases "is to place the injured person as nearly as possibl[e] in the condition he would have occupied if the wrong had not occurred").

Accordingly, CCL submits that the jury should only be permitted to learn the amounts actually paid, instead of the gross amount billed, which includes amounts for which no party is responsible and will ***never*** pay.  The presentation of evidence of the full original amount of Plaintiff's medical bills does nothing but improperly suggest to the jury that Plaintiff has more damages than were actually incurred.  Again, CCL does not seek credit for any benefit or any amount that has been paid for Plaintiff's medical care by insurance or other third party.  Rather, consistent with the legal authority set forth herein, evidence of the full unreduced amount of medical bills should not be admitted, as it would only serve to artificially inflate the actual damages allegedly suffered by Plaintiff and give Plaintiff an improper windfall.

### IV.  Preclude and Exclude All Cumulative Expert Opinion Testimony at Trial

It is axiomatic that the district courts "have broad authority over the management of trials." *Tran v. Toyota Motor Corp.*, 420 F.3d 1310, 1315 (11th Cir. 2005).  Such authority includes the power to exclude evidence which is unfairly prejudicial or cumulative.  *See* Fed. R. Evid. 403 (providing that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence").  As the Eleventh Circuit explained in *U.S. v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004), "[b]ecause of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403," noting that "[e]xclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury, or if the expert testimony is cumulative or needlessly time consuming." (Citations

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

omitted); *see also Hull v. Merck & Co., Inc.*, 758 F.2d 1474, 1477 (11ᵗʰ Cir. 1985) (finding that admission of speculative and "potentially confusing testimony is at odds with the purposes of expert testimony as envisioned in Fed. R. Evid. 702"); *United States v. Stevens,* 935 F.2d 1380, 1399 (3d Cir. 1991) (finding expert testimony properly excluded because its probative value was outweighed by concerns of "undue delay, waste of time, or needless presentation of cumulative evidence").   The Eleventh Circuit suggested in *Frazier* that preclusion of cumulative expert testimony is necessary because "expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Id.*

Here, Plaintiff has disclosed four experts (Michael S. Ritter, M.D., Kim Erlich, M.D., Robert M. Jasmer, M.D., and VanBuren R. Lemons, M.D.) who have opined that Dr. Carvajal breached the standard of care in rendering care to Plaintiff, with each of the experts specifically opining that Dr. Carvajal was negligent in failing to timely administer antibiotics.  [Ritter report, attached as Ex. 3, p. 15; Erlich report, attached as Ex. 4, p. 6; Jasmer report, attached as Ex. 5, pp. 14-17; Lemons report, attached as Ex. 6, p. 1].  Dr. Erlich, Dr. Jasmer, and Dr. Lemons further opined that negligence on the part of Dr. Carvajal, particularly the alleged negligent delay in the administration of antibiotics, caused Plaintiff's injuries.  [Ex. 4, p. 6; Ex. 5, pp. 16-17; Ex. 6, p. 1].  Plaintiff should ***not*** be permitted to prejudice the jury by calling multiple witnesses to present the same, cumulative expert opinion testimony.  *See Tran, supra* (affirming district court's exclusion of cumulative expert testimony at trial, where the excluded expert relied on the same evidence that the testifying expert did and would have testified on same issues); *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1574-75 (5ᵗʰ Cir. 1996) (district court did not abuse its discretion in excluding, as cumulative, expert's testimony that would have covered the same information as that of testifying witness); *Leefe v. Air Logistics, Inc.*, 876 F.2d 409, 411 (5ᵗʰ Cir. 1989) (affirming trial

- 17 -

court's ruling excluding testimony by a second expert physician as cumulative, stating that "[i]t is within the power of the district court to exclude testimony that is repetitious and cumulative of testimony already before the court."); *Sunstar, Inc. v. Alberto-Culver Co., Inc.*, 2004 WL 1899927, at *25 (N.D. Ill. Aug. 23, 2004) ("Multiple expert witnesses expressing the same opinions on a subject is a waste of time and needlessly cumulative.  It also raises the unfair possibility that jurors will resolve competing expert testimony by "counting heads" rather than evaluating the quality and credibility of the testimony).  Accordingly, this Court should exclude all cumulative expert opinion testimony at trial.

### V.  Preclude and Exclude Testimony by Plaintiff's Experts Regarding Areas Beyond Their Expertise

In order to render an admissible opinion, an expert must be qualified "by knowledge, skill, experience, training, or education . . ."  Fed. R. Evid. 702.  However, expertise in one field does not qualify an expert witness to testify about others.  *See U.S. v. Paul*, 175 F.3d 906, 912 (11th Cir. 1999) (expert qualification in one field does not make any expert any more qualified than a lay person to offer testimony on another subject requiring expertise); *StoneEagle Servs., Inc. v. Pay-Plus Solutions, Inc.*, No. 8:13-cv-2240-T-33MAP, 2015 WL 3824208, at *6 (M.D. Fla. June 19, 2015) ("Under Fed. R. Evid. 702, an expert witness may offer opinion testimony within the expert's area of expertise.  Thus, a technical expert is unqualified under Rule 702 when he or she does not possess 'relevant expertise in the pertinent area.'") (citation omitted); *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008) (noting that expert witnesses must "stay within the reasonable confines of [their] subject area") (citation omitted); *Bowers v. Norfolk S. Corp.*, 537 F. Supp. 2d 1343, 1376-77 (M.D. Ga. 2007) ("[E]ven though a proffered expert may be qualified to render some opinions, the court may exclude other opinions if it finds those opinions to extend beyond the expert's area of expertise."), *aff'd*, 300 Fed. App'x 700 (11th Cir. 2008).  As such, courts routinely exclude testimony when they determine that an expert

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

witness is testifying to an area outside of his or her expertise.  *See, e.g., Increase Minority Participation by Affirmative Change Today of Nw. Fla., Inc. v. Firestone*, 893 F.2d 1189, 1192, 1195 (11th Cir. 1990) (finding no abuse of discretion in district court's exclusion of expert testimony from a political scientist who sought to offer a statistical opinion beyond his expertise); *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) (concluding that a hydrologist specializing in flood risk management was not qualified to testify to safe warehousing practices in an action in which a warehouse was flooded); *Redman v. John D. Brush & Co.*, 111 F.3d 1174, 1179 (4th Cir. 1997) (finding that a metallurgic engineer, who was undoubtedly qualified to testify about the properties and characteristics of metal, was not qualified to testify about industry standards for a safe because he had never before analyzed a safe, engaged in the manufacture or design of safes, or received any training regarding safes).

First, this Court should exclude testimony on the part of Plaintiff's expert Dr. Erlich that the nurses who treated Plaintiff on the ship deviated from the standard of care.  Dr. Erlich is an infectious disease expert.  [Ex. 4, p. 1].  Dr. Ehrlich conceded in his deposition that "[he is] not a nurse and [he is] not the best one to provide testimony on the standard of care for nurses."  [Dep. K. Erlich at 78:20:79:2, excerpt attached as Ex. 7].  Nevertheless, Dr. Ehrlich opined that "[t]he failure by . . . the nursing staff to identify Ms. Jordan as being septic fell below the standard of care."  [Ex. 4, p. 5].

If Dr. Erlich is allowed to give expert testimony at trial outside of his true area of expertise as an infectious disease specialist, the jury is likely to be confused by the limits of his expertise and provide his testimony undue weight.  As this would unfairly prejudice CCL by confusing the issues and misleading the jury, Dr. Erlich's testimony as to nursing standards should be excluded under Rule 403.  Additionally, such testimony should be excluded because it is cumulative of the testimony of Plaintiff's nursing expert Zia Lee, RN.  [Lee report, attached as Ex. 8].  Plaintiff

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

should not be permitted to prejudice the jury with the introduction of needlessly cumulative expert testimony regarding whether the nursing staff deviated from the standard of care.

Second, Plaintiff's life care planner, Dorejane Apuna-Grummer, should be precluded from testifying regarding her assessment of Plaintiff's condition. Nurse Apuna-Grummer is a registered nurse, not a medical doctor, and thus cannot make medical diagnoses. [Dep. D. Apuna-Grummer at 8:7-9:12, excerpts attached as Ex. 9]. Nevertheless, on pages 5 through 12 of her report, Nurse Apuna-Grummer makes numerous functional assessments, including respiratory, bowel management, bladder management, and therapies. [Ex. 10]. As such assessments are beyond Nurse Apuna-Grummer's expertise, evidence and testimony regarding same should be excluded.

Finally, both Dr. Erlich and Dr. Ritter testified regarding the ship's QBC Star machine, which measures blood. However, neither expert established that they had any prior experience with the machine or had the expertise to provide expert testimony regarding same; to the contrary, Dr. Erlich testified that he needed to review the manual in an attempt to understand the reports generated for the laboratory results. [Ex. 7 at 54:12-20, 67:9-12]. As such, Plaintiff's experts should be precluded from testifying as to the operation of the machine and any error messages it may produce.

### VI.  Preclude and Exclude All Evidence, Testimony, and Argument at Trial of Corporate/Shareholder Financial Condition/Wealth and the Economic Disparity Between the Parties

Evidence, testimony and argument of CCL's and its shareholders' net worth and financial condition is irrelevant, and any claimed relevance is outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury. "The general rule is that, during trial, 'no reference should be made to the wealth or poverty of a party, nor should the financial status of one party be contrasted with the other's.'" *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1178 (11th Cir. 2002) (citation omitted). Accordingly, courts routinely preclude evidence and references to

the parties' financial well-being.  *See Kellner*, 2016 WL 8677428, at *1 (granting defendant's motion and limine and ruling that "[t]he parties may not refer to the financial resources of the Plaintiff or Defendant"); *Rosario v. Labor Ready Se., Inc.*, No. 14-21496-CIV, 2015 WL 12086100, at *5 (S.D. Fla. Aug. 31, 2015) (granting motion to exclude references to or evidence of the financial standing or wealth of the parties); *Mowbray v. Carnival Corp.*, No. 08-20931-CIV-Altonaga/Brown, 2009 WL 10667070, at *6 (S.D. Fla. Apr. 13, 2009) (precluding evidence of plaintiff's financial resources and disparity of resources between plaintiff and defendants).

Any evidence of the financial positions of the parties is wholly irrelevant to the instant action because it does ***not*** tend to prove or disprove any disputed fact, but would only cloud the issues in this action.  Therefore, such evidence is irrelevant and inadmissible.  Undersigned counsel has conferred with Plaintiff's counsel, who agrees that such evidence should be excluded.

### VII. Preclude and Exclude All Evidence, Testimony, and Argument at Trial Concerning Plaintiff's Alleged Past Lost Wages and Future Loss of Earning Capacity

Plaintiff seeks damages against CCL which include "lost wages [and] income lost in the past" and alleges that "her future ability to earn income has been impaired."  [*Id.* at ¶¶ 54, 68, 75, 81, 94, 102, 113].  However, Plaintiff has since advised in her responses to CCL's First Set of Interrogatories that she "is not making a claim for any loss of past or future income, benefits, or earning capacity in this litigation."  [Ex. 11, at p. 14 - ¶ 15].  Plaintiff's counsel confirmed during Plaintiff's deposition that no claim for wage loss was being asserted in this case.  [Dep. A. Jordan at 29:18-19, excerpt attached as Ex. 12].  In light of these representations, Plaintiff should not be permitted to introduce evidence at trial regarding these items of damages.  Undersigned counsel has conferred with Plaintiff's counsel, who agrees that such evidence should be excluded.

WHEREFORE, Defendant, CARNIVAL CORPORATION, respectfully requests that this Court grant its Omnibus Motion in Limine, as specifically addressed and discussed above.

Fowler White Burnett P.A. • Brickell Arch, 1395 Brickell Avenue, 14th Floor, Miami, Florida 33131 • (305) 789-9200

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)</u>

In accordance with Local Rule 7.1(a)(3), counsel for the movant has conferred with counsel for the Plaintiff, Michael D. Sharp, Esq., in a good faith effort to resolve the issues raised in the Motion. Counsel for Plaintiff agrees to the exclusion of (1) testimony by Dr. Fullerton regarding the care provided by Dr. Carvajal to Plaintiff, (2) evidence, testimony, and argument of corporate/shareholder financial condition/wealth and the economic disparity between the parties; and (3) evidence, testimony, and argument concerning Plaintiff's alleged past lost wages and future loss of earning capacity. Plaintiff objects to the remainder of the Motion.

Respectfully submitted,

*/s/ Marc J. Schleier*
Christopher E. Knight
Fla. Bar No. 607363
Email: cknight@fowler-white.com
Marc J. Schleier
Fla. Bar No. 0389064
Email: mschleier@fowler-white.com
Amanda A. Kessler
Fla. Bar No. 60885
Email: aaltman@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida  33131
Telephone:    (305) 789-9200
Facsimile:    (305) 789-9201

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this __10th__ day of June, 2019, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Marc J. Schleier*
Marc J. Schleier

- 23 -

CASE NO. 1:17-cv-23460-DPG

## SERVICE LIST

CASE NO. 1:17-cv-23460-DPG

Adam Brum, Esquire
Morgan & Morgan
5544 Central Avenue
St. Petersburg, FL 33707
E-Mail: abrum@forthepeople.com;
cmarckese@forthepeople.com;
kmitnik@forthepeople.com;
marnold@forthepeople.com
Telephone: (727) 318-6344
Facsimile:  (727) 318-6374
Attorney for ALEAH JORDAN

Moseley C. Collins III, Esquire
Moseley Collins Law
1180 Iron Point Road, Suite180
Folsom, CA 95630
E-Mail: moseley@moseleycollins.com;
john@moseleycollins.com
Telephone: (916) 444-4444
Facsimile:  (916) 444-0001
Attorney for ALEAH JORDAN

John J. Kinney III, Esquire
Moseley Collins Law
1180 Iron Point Road, Suite180
Folsom, CA 95630
E-Mail: moseley@moseleycollins.com;
john@moseleycollins.com
Telephone: (916) 444-4444
Facsimile:  (916) 444-0001
Attorney for ALEAH JORDAN

Keith Mitnik, Esquire
Morgan & Morgan, P.A.
20 North Orange Avenue, 16th Floor
P.O. Box 4979
Orlando, FL 32802-4979
E-Mail: kmitnik@forthepeople.com;
marnold@forthepeople.com
Telephone: (407) 849-2383
Facsimile:  (407) 245-3381

- 24 -